IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


BRYAN KEITH EDMONDSON,
      Petitioner,

vs.                           Case No.:  5:03cv99/MCR/EMT

JAMES CROSBY, JR.,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Plaintiff originally asserted fourteen grounds for relief.  Respondent filed an answer asserting that Grounds 2-4, 6, and 8-14 were not exhausted in the state courts, therefore, the petition was subject to dismissal as a "mixed" petition (*see* Doc. 7).  Petitioner filed a reply conceding that he had not exhausted Grounds 11, 13, and 14, and he did not contest Respondent's contention that Grounds 8-10 and 12 were not exhausted (*see* Doc. 9).  Upon review, this Court concluded that the petition contained both exhausted and unexhausted claims, therefore, Petitioner was directed to file a notice with the court indicating whether he wished to voluntarily dismissed Grounds 8-14 (*see* Doc. 10).  In response, Petitioner stated he wished to abandon Grounds 11, 13, and 14; additionally, he attached an exhibit indicating that after the filing of the instant petition, Grounds 8-10 and 12 had completed a full round of state court review (*see* Doc. 11).  This Court then ordered Respondent to file a supplement to its answer (*see* Doc. 12).  Upon submission of the supplemental answer, Petitioner filed a supplemental reply (*see* Docs. 20, 30).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.Fla. Loc. R. 72.2(b).  After a careful review of the state court proceedings and consideration of all issues raised by Petitioner, it is the opinion of the undersigned

that an evidentiary hearing is not required for disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.       BACKGROUND

Petitioner was charged by an amended information filed in the Circuit Court in and for Bay County, Florida, with burglary of a dwelling, sexual battery involving serious physical force, and kidnapping (Doc. 7, Ex. A).  Following a jury trial, Petitioner was found guilty on all counts (*see id.*, Ex. B).  On September 18, 1998, he was sentenced to concurrent terms of fifty (50) years of imprisonment on all counts, followed by probation for his natural life on the kidnapping count (*id.*).  Petitioner directly appealed his convictions and sentences to the Florida First District Court of Appeal ("First DCA").  The appellate court affirmed the convictions and sentences.  Edmondson v. State, 745 So.2d 533 (Fla. 1st DCA 1999).  Petitioner appealed the appellate court's decision to the Florida Supreme Court, and the state supreme court quashed the decision and remanded for further proceedings.  Edmondson v. State, 771 So.2d 1136 (Fla. 2000).

On remand, the First DCA reversed Petitioner's sentences, which were upward departures from the state sentencing guidelines, and remanded the case to the trial court with directions that the court impose sentences within the guidelines range.  Edmondson v. State, 777 So.2d 434 (1st DCA 2000).  Petitioner was resentenced within the guidelines to concurrent terms of 336.25 months (approximately 28 years) of imprisonment on all counts, followed by probation for his natural life on the kidnapping count (Doc. 7, Ex. D).[1]

On June 19, 2002, Petitioner filed a motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 7, Ex. G at 1-25).  The trial court summarily denied the motion on February 20, 2003 (*id.* at 26-27).  Petitioner appealed the denial to the First DCA, and the appellate court affirmed on August 25, 2003.  Edmondson v. State, 854 So.2d 196 (Fla. 1st DCA 2003) (Table).

---

[1]Additionally, in the order of probation on the kidnapping count, the trial court included sex offender conditions, specifically, the requirement that Petitioner receive "sexual and psychological treatment" during his imprisonment (*id.*).  Petitioner appealed the imposition of the sex offender conditions, and on May 9, 2002, the First DCA reversed the decision, directing that the sex offender conditions be stricken from the probation order.  Edmondson v. State, 816 So.2d 768 (1st DCA 2002).

Petitioner filed the instant petition on April 30, 2003 (Doc. 1).  Respondent concedes the petition is timely (Doc. 7 at 3).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

   (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[2]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and —except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

> adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); see  Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003); Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001), cert. denied, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Although Williams set forth the Supreme Court's interpretation of § 2254(d)(1), not § 2254(d)(2), the Court subsequently enunciated the § 2254(d)(2) standard:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2); see also Williams, 529 U.S. at 399, 120 S.Ct. 1495 (opinion of O'CONNOR, J.).

Miller-El, 537 U.S. 322, 123 S.Ct. at 1041 (dicta).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002);

Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002); Fugate, 261 F.3d 1206.  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate, 261 F.3d at 1216 (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-04.  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must go to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Id. (citing and quoting Williams, 529 U.S. at 406).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state

courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, *supra*, 513 U.S. at 365-66;

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)    there is an absence of available State corrective process; or

    (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

. . . .

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Picard, *supra*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7, 103 S.Ct. at 278 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, *supra*.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the

petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]   The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 115 S. Ct. at 888.  Very recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id.

Prior to Duncan, the Eleventh Circuit broadly interpreted the "fair presentation" requirement. See, e.g., Watson v. Dugger, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court had failed to follow state law which required proof of all elements of the crime, and argued in federal court that this was a due process violation); Mattox v. Dugger, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position).  However, after Duncan, the Eleventh Circuit has taken a more restrictive approach.  For example, in Zeigler v. Crosby, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court

---

[4]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial . . . ," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

Claims which have not been fairly presented but are defaulted from state court review are considered technically exhausted, because no remedies are available for purposes of § 2254(c). Coleman v. Thompson, 510 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); Engle v. Isaac, 456 U.S. 107, 125-26 n.28, 102 S.Ct. 1558, 1570 n.28, 71 L.Ed.2d 783 (1982). This court will consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default, or was never presented but the state court would now find the claim procedurally barred. Coleman, 501 U.S. at 734-35 and n.1; Caniff v. Moore, 269 F.3d 1245, 1427 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed. 2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the

claim, must have prevented petitioner from raising the claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. at 488, 106 S. Ct. at 2645).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One:  "The Trial Court Had No Subject Matter Jurisdiction At The Time It Purported To Enter An Order Setting Conditions For Appellant's Probation"

Petitioner claims that the trial court had no jurisdiction to enter the order of probation on his original sentence (Doc. 1 at 5).  He states the judgment of conviction and sentence was issued on September 18, 1998, he filed his notice of appeal of the judgment on October 8, 1998, and the probation order was entered December 9, 1998 (*id.*).  Petitioner contends the trial court was divested of jurisdiction upon his filing the notice of appeal, therefore, it lacked jurisdiction to enter the probation order.

Respondent contends this claim is moot, because the original sentence and probation order were superceded upon Petitioner's resentencing (Doc. 7 at 5).  Respondent is correct.  Where a defendant's sentence is invalidated by a state reviewing court, and the case is remanded for resentencing, a defendant's federal habeas challenge to the original sentence is rendered moot.  *See* <u>James v. Singletary</u>, 995 F.2d 187, 188 (11th Cir. 1993).  Therefore, Petitioner is not entitled to relief on this claim.

B.    Ground Two:  "Trial Court Reversibly Erred By Failing To Instruct The Jury On Trespass As a Permissive Lesser Of Burglary With Assault Or Battery"

Petitioner asserts error of the trial court in denying his requested instruction on trespass, as a permissive lesser included offense of burglary with assault or battery.

Respondent argues Petitioner did not fairly present this issue as a federal claim in the state courts.  Furthermore, the issue is a matter of state law and therefore not cognizable under § 2254.  Moreover, Petitioner was not entitled to the requested instruction under state law.

A review of Petitioner's initial brief in the direct appeal of his conviction shows that Petitioner mentioned his right to due process under the Fifth, Sixth, and Fourteenth Amendments in relation to this claim (*see* Doc. 7, Ex. H at 26).  The appellate court affirmed the conviction without discussion of the issue.  *See* Edmondson v. State, 745 So.2d 543 (Fla. First DCA 1999).  Even if Petitioner's reference to Constitutional amendments was sufficient to fairly present a federal claim to the state courts, Petitioner has failed to show he is entitled to federal habeas relief on this claim.

While due process requires that a defendant in a capital case receive instructions on lesser included offenses, the Supreme Court has not decided whether such instructions are required in noncapital cases.  Beck v. Alabama, 447 U.S. 625, 638 and n. 14, 100 S.Ct. 2382, 2390 and n. 14, 65 L.Ed.2d 392 (1980).  The Eleventh Circuit has held, however, that instructions on lesser included offenses are not constitutionally required in noncapital cases.  *See* Perry v. Smith, 810 F.2d 1078, 1080 (11th Cir. 1987); Redman v. Dugger, 866 F.2d 387, 389 (11th Cir. 1989); *see also* Rembert v. Dugger, 842 F.2d 301, 303 (11th Cir.), *cert. denied*, 488 U.S. 969 (1988).  In the instant case, Petitioner does not allege that at the time the jury made its determination of guilt, he was subject to the death penalty.  Therefore, the state court's rejection of his claim was not contrary to or an unreasonable application of Supreme Court law.

C.    Ground Three:  "Trial Court Reversibly Erred By Denying Appellant's Motion For Judgement [sic] Of Acquittal On The Kidnapping Charge Because There Was No Evidence The Victim Was Moved At All, And Her Confinement Was Merely Incidental To The Sexual Battery."

Petitioner contends the trial court's alleged error in denying his motion for judgment of acquittal on the kidnapping charge violated his federal due process rights.  In support of his claim, he states his alleged movement of the victim from a bed to the floor was inconsequential and incidental to the sexual battery.  Furthermore, he contends his alleged pulling the victim to the floor,

getting on top of her, and using force to keep her in place did not constitute a level of confinement sufficient to support the kidnapping conviction.

As with Ground Two, Respondent argues Petitioner did not fairly present this issue as a federal claim in the state courts.  Furthermore, the state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court law.

A review of Petitioner's initial brief in the direct appeal of his conviction reveals that Petitioner mentioned his right to due process under the Fifth, Sixth, and Fourteenth Amendments in relation to this claim (*see* Doc. 7, Ex. H at 31).  The appellate court affirmed the trial court's denial of Petitioner's motion for acquittal on the kidnapping count without discussion of the issue. *See* Edmondson v. State, 745 So.2d 543 (Fla. First DCA 1999).  As with Petitioner's prior claim, even if his reference to the Fifth, Sixth, and Fourteenth Amendments was deemed sufficient to fairly present a federal claim to the state courts, Petitioner has failed to show he is entitled to federal habeas relief.

    1.  Clearly Established Supreme Court Law

As an issue of federal law, Petitioner's claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict.  In determining whether Petitioner's conviction was obtained with constitutionally infirm evidence, reference must be made to the evidence needed to convict under State law.  Jackson v. Virginia, 443 U.S. 307, 324 & n.16, 99 S.Ct. 2781, 2792 n.16, 61 L.Ed.2d 560 (1979).  To satisfy the constitutional requirement of due process during trial, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant.  In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).  When reviewing a claim of insufficient evidence, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt but "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319, 99 S.Ct. at 2789 (citation omitted); *see also* Bishop v. Kelso, 914 F.2d 1468, 1470 (11th Cir. 1990).  The court should not reweigh the evidence but should view it in the light most favorable to the jury's verdict.  Jackson, 443 U.S. at 319, 99 S.Ct. at 2789; United States v. Veal, 153 F.3d 1233, 1253 (11th Cir. 1998);

Cosby v. Jones, 682 F.2d 1373, 1382 (11th Cir. 1982).  Because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant.  Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir.), cert. denied, 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 247 (1987).  The test under Jackson is a limited one, and "[i]t is not required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt."  Wilcox v. Ford, 813 F.2d at 1143.  "The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief."  Id.; Cosby, 682 F.2d at 1383 n. 21.

2.      Federal Review of State Court Decision

Under Florida law in effect in 1998, kidnapping was defined, in relevant part, as follows:

(1)(a)  The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
. . . .
2.      Commit or facilitate commission of any felony.

Fla. Stat. § 787.01 (1998 Supp.).  Recognizing that a literal construction of the statute could convert nearly every forcible felony into kidnapping, in Faison v. State, 426 So.2d 963 (Fla. 1983), the Florida Supreme Court established a three-prong test to determine if the movement or confinement that allegedly occurred during the commission of the felony justified an additional conviction for kidnapping.  See Nino v. State, 744 So.2d 528, 530 (Fla. 3d DCA 1999) (citing Faison, supra); Brown v. State, 719 So.2d 955, 956 (Fla. 4th DCA 1998) (citing Faison).  For a kidnapping conviction to stand,

[T]he resulting movement or confinement,
    (a)    Must not be slight, inconsequential and merely incidental to the other crime;
    (b)    Must not be of the kind inherent in the nature of the other crime; and
    (c)    Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

Faison, 426 So.2d at 965.

In the instant case, the State presented testimony from the victim that on the evening of the attack, she was alone in her hotel room asleep on the bed (Doc. 22, Ex. M at 61-63).[5]  She testified she did not lock the door to the room (*id.* at 63).  She awoke when she felt someone kneel on the bed beside her and "sensed that someone was in my face." (*id.* at 64).  She testified she "immediately jumped up and started freaking out" (*id.*).  At that point, Petitioner grabbed her by the hair and arm and dragged her onto the floor at the foot of the bed (*id.* at 64-65).  As he dragged her to the floor, Petitioner placed his hand over her mouth and his arm over her face (*id.* at 65).  The victim testified Petitioner told her to cooperate and not resist; he mentioned a gun and told her he was going to kill her (*id.*).  She testified that she squirmed and "attempted to fight back as much as [she] could" (*id.* at 77).  Petitioner then hit her across the face and bit her on her face and left breast (*id.* at 66).  Petitioner used his legs to attempt to pry her legs open (*id.* at 67).  The victim testified that at one point she was able to free one of her hands and place it over her vagina to protect herself (*id.*).  Despite her effort, Petitioner penetrated her vagina with his penis, but did not ejaculate (*id.* at 67-68).  The victim described physical injuries she received during the episode, depicted in photographs admitted into evidence, including a bloody and bruised nose, a bite mark on her face, several bruises on her inner legs, cuts and bloody lips, injuries to the tops of her feet, bruises and bite marks on her breast, a bruise on her stomach, and bruising around her eye (*id.* at 70-76).

Nelson Matos, a supervisor at the hotel where the crimes occurred, testified that he was dispatched to Room 516 by a security guard who observed a person climb onto the balcony of the room (*id.* at 86-87, 89).  Mr. Matos summoned maintenance personnel to open the door to the room, because the door had been bolted from the inside (*id.* at 90-95).  When Mr. Matos gained access to the room, he observed a man on top of a woman on the floor (*id.* at 95-96).  The man appeared to be engaged in a sexual act, and was forcing the woman's head back with his hand under his chin (*id.* at 96).  Mr. Matos instructed Petitioner to stand up, but Petitioner paid no attention and "kept on doing what he was doing" (*id.* at 96).  Mr. Matos touched Petitioner, but he again paid no attention (*id.* at 97).  Matos noticed tears coming from the victim's closed eyes, and then her eyes opened and she started screaming, "he's raping me" (*id.* at 97).  Matos pushed Petitioner off the victim and held

---

[5]References to page numbers of Exhibit M are references to the page numbers of the original trial transcript.

him down with his knee (*id.*).  When Matos finally released Petitioner, Petitioner ran to the wall and punched a hole in it (*id.* at 98).  Matos testified that the victim began screaming at Petitioner, and Petitioner responded, "if you keep talking I'm going to kill you" (*id.* at 99).

Dr. Christopher Geertz, an emergency physician at Bay Medical Center in Panama City, Florida, testified that he examined the victim after a reported sexual assault (*id.* at 159, 162).  Dr. Geertz testified that he observed "significant" signs of trauma to the victim's face, breasts, thighs, and lower legs, including bruising and lacerations consistent with a bite mark on her breast, bruising consistent with a bite mark on her cheek, bruising on the cheek and side of the nose consistent with an impact to the face, abrasions and lacerations compatible with an impact to the mouth, dried blood within the nose and bruising on the outside of the nose consistent with impact to the face, bruises on her calf consistent with hitting the ground struggling, bruises on the inside of her thighs consistent with being hit or impacted on the thighs, and abrasions to the tops of both feet consistent with rug burns (*id.* at 163-67).  Dr. Geertz testified that the fact that Petitioner's semen was not found at the scene or on the victim's body was consistent with the victim's version of events that the actual penile penetration of her vagina was fairly brief (*id.* at 177).  He further testified that in medical literature concerning sexual assault, as well as his personal experience as a physician, semen is found in only ten to thirty percent (10-30%) of sexual assault cases (*id.* at 174-75).

Ryann Whetstone was a guest in the same hotel room as the victim (*id.* at 32-33).  She testified that shortly before the attack, she left the victim alone in the room sleeping (*id.* at 36).  Ms. Whetstone stated she did not engage the dead bolt or the night latch on the door when she left, because the locks could not be engaged from outside the room (*id.* at 37).  Upon her return to the room, hotel personnel were attempting to access the room (*id.* at 128).  Upon entering the room, Ms. Whetstone observed Petitioner on top of the victim engaged in what appeared to be sexual activity, and Petitioner's arm was over the victim's mouth (*id.*).  Ms. Whetstone testified that a telephone was located on a table between the two beds in the room (*id.* at 39, 128-29).

Jennifer Davis, also a guest in the same room as the victim, testified that approximately forty-five minutes before the attack, she left the room to go to a grocery store (*id.* at 118).  Upon her return, she observed two hotel security guards attempting to gain access to the room (*id.* at 119).  When the door was opened and Ms. Davis entered the room, she observed Petitioner on top of the

victim engaged in what appeared to be a sexual act, but she did not observe actual penetration (*id.* at 120-21, 125-26).

David Humphreys, a police officer with the Panama City Beach Police Department, testified he underwent training in arrest procedures and control of subjects who are resisting arrest (*id.* at 135, 144).  He stated based on his training and experience, it is easier to control a person on the floor than on a soft surface (*id.* at 146).

Petitioner testified that on the day of the attack, he believed the victim wanted him to come to her hotel room, because earlier in the day she had invited him to the room for a party (*id.* at 198-201).  When he arrived at the room later that day, the door was closed, so he went to the room next door and "did a balcony climbing" (*id.* at 201).  When he got to the balcony of the victim's room, he observed the victim on the bed (*id.* at 202).  He knocked on the window, but the victim did not respond (*id.*).  He knocked again, and "She turned around and I guess she saw me out there, I was the only one out there, I guess she happened to see me, I was the only one out there, she nodded me in."(*id.*).  He entered the room, sat on the bed, and "we just started kissing and things like that." (*id.*).  He testified they both stood up and "got too intimate" and "ended up" on the floor (*id.* at 217).  Petitioner testified the victim "went along with" his behavior; she never told him to stop; he never used force in touching her, and everything appeared to be consensual (*id.* at 203).  He stated her behavior changed when the security guard and the victim's friends entered the room; at that point, the victim indicated she was being raped (*id.*).  Petitioner denied that his arm was over the victim's mouth, or that he in any way prevented her from talking or screaming (*id.* at 205-06).  Additionally, he stated he never locked the door to the room or engaged the night latch (*id.* at 205).

On cross-examination, Petitioner admitted he caused the mark on the victim's breast, but stated it was a "hickey" (*id.* at 207).  He denied that he caused any of the other injuries or that he touched or penetrated her vagina (*id.* at 207-08, 213-17).

The evidence, viewed in a light most favorable to the State, is sufficient to permit a rational juror to conclude beyond a reasonable doubt that Petitioner forcibly and by threat moved and confined the victim against her will with the intent of committing sexual battery.  The victim's physical injuries, including bruises and rug burns, demonstrate the force and violence used by Petitioner to overcome the victim's resistance and move her onto the floor.  Furthermore, dragging

the victim to the floor moved her away from the telephone, thereby preventing her ability to call for help, and it rendered commission of the sexual battery easier by removing her from a soft surface to a hard one.  Moreover, the evidence showed that Petitioner bolted the door and continued to use force, including holding the victim down, hitting her across the face, and biting her, as well as threatening to kill her, to prevent her escape.  Additionally, Petitioner covered the victim's mouth to prevent screaming.  A reasonable juror could conclude beyond a reasonable doubt that these actions were not slight, inconsequential, or incidental; that taken as a whole, the movement and confinement were not of the kind inherent in the nature of the underlying sexual battery; and that the movement and confinement made the sexual battery substantially easier to commit and significantly lessened the risk of detection.  Because a rational trier of fact could have found guilt beyond a reasonable doubt, this Court concludes that the State appellate court did not contrarily or unreasonably apply clearly established Supreme Court law when it affirmed the trial court's denial of Petitioner's motion for acquittal on the kidnapping count.  The evidence did not have to exclude every reasonable hypothesis of innocence to meet the federal standard.

     D.     Ground Four: "Trial Court Reversibly Erred By Denying Appellant's Motion For Judgement [sic] Of Acquittal On The Charge Of Sexual Battery With The Actual Use Of Force Likely To Cause Serious Personal Injury Because The Evidence Failed To Show That Level Of Force Was Actually Used."

Petitioner contends the trial court's alleged error in denying his motion for judgment of acquittal on the sexual battery charge violated his federal due process rights.  In support of his claim, he states he neither used force likely to cause serious injury, nor actually caused serious injury to the victim.  Petitioner contends the bites and punch to the victim's face were not the type of force likely to cause "great bodily harm or pain, permanent disability, or permanent disfigurement."  Petitioner suggests the victim's lack of disfigurement or lasting disability shows that her injuries were not the type that qualified as "serious personal injuries."  Furthermore, the fact that her nose and lip completely healed within a few days, and that her breast was "a little tender," but not sore enough to prevent her from engaging in normal activities, demonstrates the injuries were less serious than contemplated by the statute.

As with Grounds Two and Three, Respondent argues Petitioner did not fairly present this issue as a federal claim in the state courts.  Furthermore, the state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court law.

A review of Petitioner's initial brief in the direct appeal of his conviction shows that Petitioner mentioned his right to due process under the Fifth, Sixth, and Fourteenth Amendments in relation to this claim (*see* Doc. 7, Ex. H at 36).  The appellate court affirmed the conviction without discussion of the issue.  *See* Edmondson v. State, 745 So.2d 543 (Fla. First DCA 1999).  Even if Petitioner's reference to the Constitutional amendments was sufficient to fairly present a federal claim to the state courts, Petitioner has failed to show he is entitled to federal habeas relief on this claim.

1.      Clearly Established Supreme Court Law

The clearly established Supreme Court law on claims of insufficiency of the evidence was set forth above.

2.      Federal Review of State Court Decision

Section 749.011(3) provides:

> A person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof uses or threatens to use a deadly weapon or uses actual physical force likely to cause serious personal injury commits a life felony, punishable as provided in s. 775.082, s. 775.083, s. 775.084, or s. 794.0115(1)(a).

Florida law defines "serious personal injury" as "great bodily harm or pain, permanent disability, or permanent disfigurement."  Fla. Stat. § 794.011(1)(g).

In the instant case, the evidence shows Petitioner grabbed the victim by the hair and arm, dragged her onto the floor, hit her across the face, bit her face and left breast, and used his legs to pry her legs open.  The victim, as well as the physician who treated her injuries, described her injuries as a bloody and bruised nose, bite marks on her face and breast, several bruises on her inner and lower legs, cuts and bloody lips, and rug burns on the tops of her feet.  Photographs documented these injuries.  Dr. Geertz testified, "I saw significant signs of trauma to her face, her breasts, her thighs, her lower legs.  She was pretty extensively injured." (Doc. 22, Ex. M at 163).  He further

testified her injuries were consistent with being bitten, struck, dragged, hitting the ground, and struggling (*id.* at 163-66).

Describing the pain she suffered from the injury to her breast, the victim testified, "I had pain for a long time afterwards.  It was hard for me to wear a bra, it was hard for me when people hugged me for up to two months and then it started to get better. . . . it still is a little tender though" (Doc. 22, Ex. M at 78-79).  On a scale of one to ten, ten being the most severe, she testified that the level of pain she suffered as a result of the bite to her breast was "10" (*id.* at 85).  However, the victim acknowledged she was able to perform regular activities, and she was not under continued doctor's care for the injury (*id.* at 86).  The victim further testified that her lip healed within four or five days after the attack, her nose healed within ten days, and some of the bruises healed within two weeks, but some lasted longer (*id.* at 79).  The victim stated she did not suffer a permanent, physical disability from the attack, nor did she have surgery to correct any of her injuries (*id.* at 85).

In addition to her physical injuries, the victim testified to the emotional pain she suffered as a result of the attack.  She stated that after the security guards separated Petitioner from her, she started screaming and crying, "I was laying on the bed crying and then I felt this incredible surge of anger just come over me and I just went over and I started hitting him and screaming and kicking and doing everything I possibly could." (*id.* at 78).  Ryann Whetstone, the victim's roommate, also described the victim's emotional state, "Right when they got Edmondson off of her she stood up like that and went to the other side of the room and she was going crazy, she was crying, her hair was all in her face, she just kept yelling at him and saying 'you raped me, you raped me' . . ." (*id.* at 131).

The evidence, viewed in a light most favorable to the State, is sufficient to permit a rational juror to conclude beyond a reasonable doubt that Petitioner used actual physical force likely to cause great bodily harm or pain.  Because a rational trier of fact could have found guilt beyond a reasonable doubt, this Court concludes that the State appellate court did not contrarily or unreasonably apply clearly established Supreme Court law when it affirmed the trial court's denial of Petitioner's motion for acquittal on the sexual battery count.  Again, the evidence did not have to exclude every reasonable hypothesis of innocence to meet the federal standard.

E.      Ground Five:  "The Trial Court Committed Reversible Error By Responding To A Jury Question Without Notifying Appellant And Counsel That A Question Had Been Asked, And Without Giving Counsel An Opportunity To Participate In The Response To That Question."

Respondent asserts that during jury deliberations, the jury notified the judge that they had a question regarding the instruction on the kidnapping charge, but neither Petitioner nor his counsel was notified of the question, thus, they were not given an opportunity to participate in formulating a response.  Petitioner contends this alleged error violated his federal due process rights.

Respondent argues Petitioner originally raised this issue in his direct appeal, but abandoned it; thus it is unexhausted and procedurally barred (Doc. 7 at 8).

Respondent is correct.  The record shows Petitioner raised this issue in his direct appeal (*see* Doc. 7, Ex. H at 37).  The State filed a motion to supplement the record with affidavits of the prosecutor and Petitioner's trial counsel stating that the parties, including Petitioner, were present when the jury requested clarification on the kidnapping charge (*see id.*, Exs. I, J).  Additionally, the prosecutor and Petitioner's counsel stated the trial judge consulted with them, and the parties agreed that the Florida standard jury instruction on kidnapping and false imprisonment would be read to the jury in response to their question (*id.*, Ex. I).  Petitioner did not oppose the motion to supplement the appellate record (*id.*).  The appellate court treated the unopposed motion as a stipulation of the parties to correct the record, as reflected in the affidavits, and granted the motion (*id.*, Ex. J). Petitioner's counsel then filed a notice with the appellate court stating he wished to abandon this issue in the direct appeal (*id.*, Ex. L).

Because Petitioner abandoned this claim in the state courts, this Court concludes he failed to fairly present the issue to the state courts.  Furthermore, the issue is one that "could have or should have been raised" in his direct appeal, therefore, he cannot now seek relief through a state postconviction proceeding.  Fla. R. Crim. P. 3.850(c)(6).  Moreover, Petitioner does not assert cause for his failure to pursue the issue in the state courts, or prejudice therefrom.  Therefore, the claim should be denied as unexhausted and procedurally barred.

F.      Ground Six:  "The Trial Court Reversibly Erred And Violated Appellant's Right  To Due Process By Refusing To Redact A Nonresponsive Answer Given By Dr. Geertz During A Deposition To Perpetuate Testimony In Which He Gave His Personal Opinion That Appellant Was A Sadomasochist."

Petitioner contends the trial court denied his federal due process rights by denying his trial counsel's objection to the following testimony of Dr. Geertz during counsel's cross-examination:

> Q.    And you don't know if this was some type of consensual sexual relationship?
> A.    Without having been there no one can say one hundred percent what is consensual sex.  **Of course there are people that have sadomasochistic relationships that --**
>
> MS. BELLER [Petitioner's counsel]:  I would object to that.
> THE WITNESS:        **-- do things like this for pleasure, however --.**
>
> MS. BELLER:       And I would object that he keeps, you know --, I would ask you that when I ask you a question that you answer just the question.
> THE WITNESS:      I'm answering the question.  These injuries are completely consistent with the events as they were described to me.
> Q.    (Ms. Beller continuing)  It could also be consistent with some type of rough sex in which she consented to, is that not correct?
> A.    That is entirely possible but that's not the way it was portrayed to me.

(Doc. 22, Ex. M at 169-70) (emphasis added).  Petitioner's counsel objected to the testimony on the ground that it was confusing and misleading (*id.* at 155-56).[6]  Additionally, Petitioner contends the testimony was irrelevant and constituted "devastating character assassination."

Respondent argues Petitioner did not fairly present this issue as a federal claim in the state courts.  Furthermore, the evidentiary issue is a question of state law and therefore, not the proper subject of federal habeas relief.  Moreover, the state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court law.

A review of Petitioner's initial brief in the direct appeal of his conviction shows that Petitioner mentioned his right to due process under the Fourth, Fifth, and Fourteenth Amendments in relation to this claim (*see* Doc. 7, Ex. H at 44).  The appellate court affirmed the conviction without discussion of the issue.  *See* Edmondson v. State, 745 So.2d 543 (Fla. First DCA 1999).  Assuming arguendo that Petitioner's reference to the Constitutional amendments was sufficient to fairly present a federal claim to the state courts, Petitioner has failed to show he is entitled to federal habeas relief on this claim.

------

[6]Dr. Geertz's testimony was presented in the form of a videotaped deposition.  Prior to playing the videotape to the jury, the trial judge heard and ruled on counsel's objections at a bench conference (*see* Doc. 22, Ex. M at 151-58).

Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); Wainwright v. Goode, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); Sims v. Singletary, 155 F.3d 1297, 1312 (11th Cir. 1998), *cert. denied*, 119 S.Ct. 2373, 144 L.Ed.2d 777 (1999). Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief. Questions regarding state evidentiary rulings may be reviewed only when the alleged errors at trial "so infused the trial with unfairness as to deny due process of law." Felker v. Turpin, 83 F.3d 1303, 1311 (11th Cir.) (quoting Lisenba v. California, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941)), *cert. denied*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *see also* Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). The erroneous ruling must have "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993). "A denial of fundamental fairness occurs whenever the improper evidence is material in the sense of a crucial, critical, highly significant factor." Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir.) (quotation omitted), *cert. denied*, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998).

In the instant case, Petitioner has failed to show the state court's evidentiary ruling was erroneous or that the testimony rendered his trial fundamentally unfair. Petitioner's counsel questioned Dr. Geertz as to whether injuries in the nature of those sustained by the victim could have been incurred during consensual sex, including "rough" sex, and Dr. Geertz responded by describing scenarios where it was possible for such injuries to be sustained during consensual sex. Dr. Geertz's testimony was responsive to counsel's question and relevant to the issue of whether the injuries could be consistent with consensual sex. Contrary to Petitioner's assertion, Dr. Geertz did not in any way suggest Petitioner was a sadomasochist or engaged in rough sex. In fact, it was Petitioner's counsel who suggested the rough sex scenario in an attempt to cast the attack as consensual. Furthermore, Petitioner has failed to show Dr. Geertz's testimony had a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, he is not entitled to federal habeas relief on this claim.

G.   Ground Seven: "The Trial Court Reversibly Erred Because The Scoresheet Cannot Assess 18 Points For Moderate Victim Injury And 80 Points For Sex Penetration Without A

Finding By The Jury, Because To Do So Would Be To Violate The Due Process Clause Of The U.S. Constitution."

Petitioner contends he was entitled to have the jury, not the sentencing judge, determine beyond a reasonable doubt the facts underlying the assessment of sentencing points for victim injury and sexual penetration because such factors increased his sentence.

Respondent concedes Petitioner exhausted this claim in the direct appeal of his resentencing, but contends the appellate court's denial of his claim was not contrary to or an unreasonable application of Supreme Court law.

1.     Clearly Established Supreme Court Law

In Apprendi v. New Jersey, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

2.     Federal Review of State Court Decision

The state appellate court denied relief on Petitioner's claim without discussion.  *See* Edmondson v. State, 816 So.2d 768, 769 (Fla. 1st DCA 2002).

The statutory maximum sentences for all three of Petitioner's convictions was life imprisonment.  *See* Fla. Stat. §§ 810.02(2)(a), 794.011(3), 787.01(2), 775.082(3)(a)(3), and 775.082(3)(b).  The trial court resentenced Petitioner to 336.25 months of imprisonment on each offense (*see* Doc. 22, Ex. O).  Because Petitioner's sentences did not exceed the statutory maximum prescribed by Florida law, Apprendi is inapplicable.  Therefore, the state court's decision denying his claim was not contrary to or an unreasonable application of Supreme Court law.

H.     Grounds Eight, Nine, Ten, and Twelve:  Ineffective Assistance of Counsel

Respondent concedes Petitioner exhausted his ineffective assistance claims in his Rule 3.850 motion, but contends the state court's denial of his claims was not contrary to or an unreasonable application of Supreme Court law.

1.     Clearly Established Supreme Court Law

The legal standard clearly established by the Supreme Court for ineffectiveness of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984).  *See* Fugate v. Head, 261 F.3d 1206, 1216-17 (11th Cir. 2001); Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002) (both citing Williams v. Taylor and Strickland).  The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other.  Strickland, 466 U.S. at 697, 104 S.Ct. at 2069; Wellington, 314 F.3d at 1260.  In assessing performance, the court considers whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  466 U.S. at 686, 104 S.Ct. at 2064.  "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner must show that "no competent counsel would have taken the action that his counsel did take."  Fugate, 261 F.3d at 1217 (citation omitted).

Indeed, the Strickland court recognized that "[e]ven the best criminal defense attorneys would not defend the same petitioner in the same way."  466 U.S. at 689, 104 S.Ct. at 2065.  Matters of trial strategy and tactics, unless plainly not within the bounds of reasonableness, and even if unsuccessful, do not constitute ineffective assistance.  Bell v. Evatt, 72 F.2d 421 (4th Cir. 1995).

> Trying cases is not exact science.  And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate."  Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992).  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy."  Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993).  Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish no competent counsel would have taken the action that his counsel did take).

Indeed, counsel's strategic and tactical decisions on which defense to pursue are "virtually unchallengeable."  Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (quoting Strickland).  But not every strategic decision passes constitutional muster.  Whether a particular

decision by counsel was a tactical one is a question of fact, <u>Hardwick v. Crosby</u>, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. *See* 28 U.S.C.   § 2254(e)(1); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1367 (11th Cir. 1995); <u>Horton v. Zant</u>, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, <u>Hardwick</u> 320 F.3d at 1163; <u>Jackson</u>, 42 F.3d at 1367; <u>Horton</u>, 941 F.2d at 1462.  In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065.

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high.  <u>Wellington</u>, 314 F.3d at 1260.  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693, 104 S.Ct. at 2067).  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693-94, 104 S.Ct. at 2068.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694, 104 S.Ct. at 2068.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  <u>Williams</u>, 529 U.S. at 405-406, 120 S.Ct. at 1519.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694-95, 104 S.Ct. at 2068.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695, 104 S.Ct. at 2068-69.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will

have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695-96, 104 S.Ct. at 2069.

2. <u>Federal Review of State Court Decision</u>

The only claims raised by Petitioner in his Rule 3.850 motion were claims of ineffective assistance of counsel.  In the state court's written decision denying Petitioner's motion, the court analyzed whether Petitioner's allegations of deficiency in counsel's performance were meritorious and whether Petitioner demonstrated he was prejudiced by the alleged errors.  Additionally, the court cited <u>Strickland</u> in its analysis of one of Petitioner's claims.  Because the state court explicitly identified and applied the two-prong <u>Strickland</u> standard, and the state court did not reach a decision different from the Supreme Court in a case with indistinguishable facts, Petitioner cannot show the state court decision was "contrary to" <u>Strickland</u>.  Therefore, he is entitled to federal habeas relief only if he establishes the state court's denial of his claims was objectively unreasonable.

a. "Defense Counsel Rendered Ineffective Assistance Of Counsel For Failure To Object To The Validity Of The State's Witnesses Testimony When The Testimonies From The Witnesses Are In Complete Discord Of Each Other's Testimony."

Petitioner contends his counsel performed in a constitutionally deficient manner by failing to object to the testimonies of Jennifer Davis and Ryann Whetstone on the ground that their testimonies were inconsistent.  Specifically, he alleges Jennifer Davis stated Petitioner confined himself to the sink area of the hotel room shared by the victim and her roommates, but Ryann Whetstone testified Petitioner walked around the room.  Additionally, he alleges Jennifer Davis contradicted herself by stating her roommate Angela Keaton was not in the room when Petitioner was there, and then testified that Angela was present when she (Jennifer) left the room.  Petitioner

also alleges Ryann Whetstone testified inconsistently when she stated that when she first entered the hotel room during the attack, she could not see whether or not the victim was able to scream, but then testified the victim was prevented from screaming because Petitioner's arm was over the victim's mouth.  He contends he was prejudiced by his counsel's failure to object because the jury was not made aware of the conflict in the witnesses' testimony, and the issue was not preserved for appellate review.

Upon review of the record, the state court found that Petitioner's counsel cross-examined both witnesses, and that Petitioner failed to set forth any legal grounds upon which a valid objection could or should have been made; thus, Petitioner's allegation of error in counsel's performance was without merit (Doc. 7, Ex. G at 26).   Additionally, the court concluded Petitioner failed to demonstrate prejudice.

Initially, the fact that a witness' testimony is inconsistent with another witness' testimony is not a cognizable basis for objection under Florida law.  Furthermore, Petitioner has failed to show that the testimony was actually inconsistent.  Regarding the issue of Petitioner's position in the room, Jennifer Davis testified that Petitioner confined himself to the sink area when she (Jennifer) was present in the room (Doc. 22, Ex. M at 26-27).   Ryann Whetstone testified that Petitioner walked around the room _after_ Jennifer Davis and another roommate left the room and went to the grocery store (*id.* at 34).   Regarding Angela Keaton's presence in the room, Jennifer Davis testified that when Petitioner initially arrived at the room, all of the roommates were present except Angela Keaton, and in the next sentence she states that Ms. Keaton subsequently returned to the room (*id.* at 24).  This testimony is not inconsistent with Jennifer Davis' testimony that when she later left the room to go to the store, Ms. Keaton was present (*id.* at 28).  Finally, regarding Ryann Whetstone's testimony about her observation of Petitioner's arm over the victim's mouth, she testified that when she first entered the room during the attack, she could not see whether or not the victim was able to scream, but when she walked in further, she could (*id.* at 128).  She then testified that the victim was prevented from screaming by Petitioner's arm over her mouth (*id.*).  On cross-examination, Ms. Whetstone testified that when she initially entered the room, she could see Petitioner's backside, but not his front, and she was not close enough to see what was "actually going on" between Petitioner and the victim (*id.* at 135-36).  Ms. Whetstone's testimony that she was unable to observe the

interaction of Petitioner and the victim upon her initial entry into the room is not inconsistent with her testimony that she was subsequently able to observe Petitioner's arm over the victim's mouth.

Because Petitioner has failed to establish his counsel had a meritorious basis for objecting to or conducting further cross-examination of the testimony of Ms. Davis and Ms. Whetstone, he has failed to satisfy the performance prong of the <u>Strickland</u> standard.  Additionally, he has failed to demonstrate a reasonable probability that further cross-examination would have created reasonable doubt as to his guilt. Therefore, the state court's denial of this claim was not an unreasonable application of <u>Strickland</u>.

> **b.** "Defense Counsel Rendered Ineffective Assistance Of Counsel For Failure To Impeach Witness On Prior Inconsistent Statements."

Petitioner contends trial counsel erred in failing to impeach Nelson Matos regarding Petitioner's threatening to kill the victim.  Petitioner alleges that in an interview with police shortly after the incident (*see* Doc. 1, attachment), Matos stated Petitioner responded, "That's not what happened" when the victim accused him of rape; however, in Matos' deposition and trial testimony, Matos testified Petitioner threatened to kill the victim in response to her accusations.  Additionally, Petitioner contends Matos gave inconsistent statements regarding the victim's consumption of alcohol.  During Matos' interview with police, he stated the victim was very drunk at the pool area that day; but in his deposition testimony he stated that upon entering the room at the time of the attack, he observed the victim <u>may</u> have been drinking.  Finally, Petitioner contends Matos was inconsistent in his description of the time that elapsed before he discovered that a sexual battery occurred.  Apparently in his statement to the police, Matos said approximately two seconds after he entered the hotel room, he pushed Petitioner off the victim and the victim started screaming that she had been raped; however, in his deposition and trial testimony, Matos stated he was in the room 15-20 seconds before he discovered the victim had been raped.  Petitioner contends he was prejudiced by his counsel's failure to impeach Matos because if counsel had questioned Matos on the alleged inconsistencies, the jury would have dismissed Matos' testimony on the issue of whether Petitioner threatened the victim with violence.

Upon review of the record, the state court found that Mr. Matos' trial testimony was consistent with his deposition testimony.  Furthermore, Petitioner failed to demonstrate prejudice under Strickland (Doc. 7, Ex. G at 26).

Upon review of Mr. Matos' statement to police, his deposition testimony, and his trial testimony, this Court concludes Petitioner has failed to establish his counsel performed unreasonably in failing to impeach Mr. Matos on the points raised by Petitioner.  In light of the consistency of Matos' deposition and trial testimony regarding Petitioner's threats to the victim, and considering the victim's testimony that Petitioner threatened to kill her, counsel's failure to attempt to impeach Matos on this point, thereby reducing the risk of highlighting the threats, was not unreasonable.  Furthermore, the difference in Matos' estimation of the number of seconds it took him to realize that a crime occurred upon entering the hotel room, a difference of 13-15 seconds, was of little significance, thus counsel's failure to attempt impeachment of Matos on this point was certainly reasonable.  Moreover, counsel's failure to question Matos regarding the victim's consumption of alcohol earlier in the day was not unreasonable, especially in light of the testimony of Lieutenant Humphreys and Dr. Geertz that shortly after the attack, the victim did not appear intoxicated at all (*see* Doc. 22, Ex. M at 143-44,  172).

Additionally, Petitioner has failed to establish prejudice.  Petitioner does not allege a reasonable probability exists that but for counsel's failure to impeach Matos, the result of the trial would have been different; rather, he alleges only that the jury would have discredited Matos' testimony on the issue of whether Petitioner threatened the victim.  Furthermore, even if Petitioner sufficiently alleged prejudice, the record does not support a conclusion that there is a reasonable probability a juror would have had reasonable doubt about Petitioner's guilt if Petitioner's counsel had attempted to impeach Matos as suggested by Petitioner.  Accordingly, the state court's denial of Petitioner's claim was not unreasonable.

c.     "Defense Counsel Rendered Ineffective Assistance Of Counsel For Failing To Challenge The Expertise Of Dr. Geertz."

Petitioner contends trial counsel should have made a motion to strike Dr. Geertz's testimony on the ground that he was not a board certified emergency physician at the time of his examination of the victim or when he testified at trial.  Petitioner asserts Dr. Geertz was tendered by the State as

an expert in the field of emergency medicine, even though he was not board certified in that area.

The state court found that the record showed Petitioner's counsel objected to the State's tendering Dr. Geertz as an expert in the field of emergency medicine, and counsel elicited testimony from Dr. Geertz that he was not board certified as an emergency physician (*see* Doc. 7, Ex. G at 26-27). Thus, the court concluded Petitioner's claim of attorney error was without merit (*id.* at 27). Additionally, Petitioner failed to show he was prejudiced by counsel's alleged error (*id.*).

A review of the trial transcript shows that during a bench conference prior to the presentation of Dr. Geertz's testimony, Petitioner's counsel objected to the State's tendering him as an expert in the field of emergency medicine (*see* Doc. 22, Ex. M at 153-54). The trial court initially appeared to sustain the objection, but after further discussion, overruled it, and ruled that Dr. Geertz would be permitted to testify as an emergency room physician (*id.*). Petitioner's counsel reiterated her objection, and the trial judge stated, "You've made your objection" and proceeded to the next issue (*id.* at 154). Thus, the record establishes Petitioner's counsel made reasonable efforts to prevent Dr. Geertz from testifying as an expert in the field of emergency medicine. Furthermore, upon the trial court's overruling counsel's objection, counsel elicited testimony from Dr. Geertz that he was not a board certified emergency physician (*id.* at 167).

Additionally, Petitioner has failed to establish a reasonable probability that the result of the proceeding would have been different if counsel had pursued the issue further, either by further arguing the objection or eliciting more testimony on cross-examination. Indeed, the trial transcript shows that when counsel attempted to further argue her objection during the bench conference, the trial judge clearly indicated that her ruling was final. Accordingly, the state court's denial of Petitioner's ineffective assistance claim was not unreasonable.

> d.      "Defense Counsel Rendered Ineffective Assistance Of Counsel For Failing To Object To The Testimony Given By Dr. Geertz."

Petitioner contends his counsel should have objected to the testimony of Dr. Geertz on the ground that the testimony was based upon hearsay statements of the victim as to the cause of her injuries. Petitioner also appears to assert that counsel should have objected to Dr. Geertz's testimony regarding the pictures of the victim's injuries on the ground that Dr. Geertz did not know when the pictures were taken or the actual cause of the injuries depicted. Petitioner then reiterates

his contention that Dr. Geertz should not have been permitted to testify as an expert in the field of emergency medicine.

The state court considered Petitioner's claim in conjunction with his previous claim regarding counsel's failure to challenge the expertise of Dr. Geertz and denied the claim as nonmeritorious (*see* Doc. 7, Ex. G at 26-27).  Additionally, the state court concluded Petitioner failed to demonstrate prejudice (*id.*).

Petitioner has failed to show counsel had a basis for objecting to Dr. Geertz's testimony.  Dr. Geertz testified that the victim was brought to the emergency room by police for examination for a reported sexual assault (Doc. 22, Ex. M at 162).  Dr. Geertz described each injury depicted in the photographs and stated the general character of the cause or external source consistent with each injury (for example, circular or ring-shaped bruising and superficial jagged lacerations were consistent with a bite mark, bruising to the legs was consistent with being struck or hitting the ground struggling, abrasions to the tops of the feet were consistent with being dragged or rug burns) (*id.* at 163-67).  He testified that the injuries in the photographs fairly and accurately represented the victim's injuries as they appeared when he examined her or shortly thereafter (*id.* at 163-64).  He further testified that the injuries depicted in the photographs and the injuries he observed during his examination were consistent with the incident described to him by the victim that night (*id.* at 167).

Florida law provides that the following statements are admissible as evidence:

> **(4)**   **Statements for purposes of medical diagnosis or treatment**.--
> Statements made for purposes of medical diagnosis or treatment by a person seeking the diagnosis or treatment . . . which statements describe medical history, past or present symptoms, pain, or sensations, or the inceptions or general character of the cause or external source thereof, insofar as reasonably pertinent to diagnosis or treatment.

Fla. R. Evid. 90.803(4).  Thus, Dr. Geertz's references to the victim's description of the inception or general character of the cause or external source of her symptoms, pain, and sensations were clearly admissible under the rule.

Furthermore, Petitioner has failed to assert a valid basis for an objection to Dr. Geertz's testimony that the photographs fairly and accurately represented the victim's injuries as they appeared on the night of his examination or shortly thereafter.  Dr. Geertz personally observed the

victim's injuries, thus he was competent to testify whether the pictures accurately depicted them. Having no basis to object to the doctor's testimony, Petitioner's counsel did the next best thing in cross-examining him, including highlighting the fact that he was not present when the injuries were incurred or when the photographs were taken (*see* Doc. 22, Ex. M at 168-74).  Petitioner has failed to establish his counsel performed in a deficient manner, therefore, the state court's denial of his claim was not an unreasonable application of Strickland.

      For the foregoing reasons, it is, therefore, respectfully **RECOMMENDED**:

      That the petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

      At Pensacola, Florida, this 11th day of March, 2005.


                        */s/ Elizabeth M. Timothy*
                        **ELIZABETH M. TIMOTHY**
                        **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

      **Objections to these proposed findings and recommendations may be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**